# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ANGELA K. FOREMAN,**

      **Plaintiff,**

  v.                                          Civil Action 2:20-cv-2171
                                                        Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Angela K. Foreman ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits. With the consent of the parties pursuant to 28 U.S.C. § 636(c) (ECF No. 8), this matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 20), and the administrative record (ECF No. 13). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**

Plaintiff filed her application for supplemental security income benefits on July 25, 2016, alleging that she was disabled beginning June 21, 2016. (R. at 187-192.) After Plaintiff's application was denied initially and on reconsideration, administrative law judge Gregory M. Beatty (the "ALJ") held a hearing on February 28, 2019, before issuing a decision denying Plaintiff's application on January 7, 2020. (Tr. 17-62.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–6.)

Plaintiff filed this action on April 29, 2020 (Doc. 1), and the Commissioner filed the administrative record on October 7, 2020 (Doc. 13). Shortly thereafter, Plaintiff filed her Statement of Errors (Doc. 15) and the Commissioner filed his Opposition (Doc. 20). As Plaintiff did not file a reply, this matter is now ripe for review.

### A. Relevant Hearing Testimony

Plaintiff's Statement of Errors concerns her cerebral palsy, right knee, and right hand and wrist. (ECF No. 15.) Accordingly, the Court limits its discussion of the record to the same. The ALJ summarized Plaintiff's relevant testimony and statements submitted to the Administration:

> The claimant alleged that she was disabled due to a variety of conditions, including cerebral palsy, depression, posttraumatic stress disorder, and high blood pressure. She noted that she was 5'7" and 250 pounds. She stated that her conditions, among other reasons, forced her to stop working. The claimant asserted that her anxiety caused her trouble shopping, she cried frequently, and she slept excessively. She asserted that her disabled fiance helped her to perform daily activities and she cried throughout the day. She further claimed that she had difficulty lifting, standing, walking, sitting, concentrating, and completing tasks. She noted that she did not handle stress or changes in her routine well. The claimant said that she struggled to sit or stand for long periods and hold objects with her hands.

(R. at 25-26 (internal citations omitted).)

### B. Relevant Medical History

The ALJ summarized Plaintiff's relevant medical records pertaining to her cerebral palsy, right knee, and right hand and wrist as follows:

> The record reflects that the claimant had a history of several conditions predating the application date in July 2016, including right knee osteoarthritis and fracture status post arthroscopic surgery. She also had a history of depression, hypertension, and breast cancer.
>
> In July 2016, the claimant had an exam for right knee pain with grinding sensation. She was obese with a body mass index (BMI) of 38.25. On exam, she had tenderness to palpation, positive grind test, crepitance with motion, and 4/5 strength with intact foot sensation. Previous x-rays showed joint space narrowing and osteoarthritic changes. She was given an injection for her pain. She was also taking medications for hypothyroidism and hypertension.
>
> \*\*\*

> The claimant also had a hospital visit in July for a headache due to elevated blood pressure. She stabilized with medication and she was discharged. The following month, the claimant was using a cane to ambulate, but her exam was otherwise unremarkable. Later in August, the claimant went to the hospital with cellulitis, but she had no complaints regarding her chronic conditions.
>
> \*\*\*
>
> In early 2017, the claimant remained in counseling and she had continued relationship difficulties. She made some progress overall. During February, the claimant went to the emergency department with right wrist pain. She noted mild paresthesias in her fingertips as well. She had normal sensation and strength in her right hand and wrist. X-rays exhibited no acute findings but further imaging showed subluxation of the IP joint of the thumb and DIP joint of the index finger, with mild early underlying osteoarthritis of the index and small fingers. She was diagnosed with a wrist sprain.
>
> The following month, the claimant had an exam for right hand pain. She could flex and extend her fingers. She demonstrated intact sensation and neurovascular functioning. She also noted in a counseling session that her medication made her sleepy and she was planning on moving to a new apartment.

(R. at 26-27 (internal citations omitted).)

### C. The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful employment since July 25, 2016, the application date. (R. at 23.) The ALJ also determined that Plaintiff has the following severe impairments: obesity, cerebral palsy, osteoarthritis, depressive disorder, and anxiety disorder. (*Id*.) The ALJ also found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (*Id*.) Specifically, the ALJ discussed Listings 1.02 and 11.07 as follows:

> In terms of listing 1.02, the claimant had osteoarthritis in her knees and hands, with joint space narrowing in her knees. She used a cane to ambulate, but she did not require a second cane or a walker. Moreover, she was able to perform numerous daily activities as described below. Additionally, despite her hand arthritis, the evidence did not show that she was unable to perform fine and gross movements as demonstrated by her various daily activities.
>
> As for listing 11.07, the claimant had cerebral palsy, but the evidence did not document disorganization of motor function. Moreover, there were no objective

3

> findings indicating significant problems standing up from a seated position, balancing, or using her upper extremities. Furthermore, she did not have any marked limitations in the paragraph B criteria as noted below. Additionally, the claimant had no significant speech, hearing, or visual impairments.

(R. at 23-24.) The ALJ also assessed Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she requires the use of a cane to ambulate. She can frequently reach in all directions on the right. She can frequently handle and finger with the right hand. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. She can never work at unprotected heights, never work around moving mechanical parts, and never operate a motor vehicle. She is able to perform simple, routine, and repetitive tasks but not at a production rate pace. She is able to make simple work-related decisions. She can frequently interact with supervisors, co-workers, and the public. She can tolerate few changes in a routine work setting.

(R. at 25.)

As for the allegations about the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found that they were inconsistent with the record. (R. at 26.) After considering the evidence of record, the ALJ found that the assessed RFC "is supported by the objective medical evidence of record and the opinions of the individuals that have had the opportunity to review the claimant's records and examine the claimant." (R. at 29.) The ALJ added that he "[did] not find that the claimant's symptoms are so severe as to prohibit her from performing all basic work activities," and that the RFC set forth above "addresses the claimant's symptoms to the degree supported by the evidence as a whole." (*Id.*)

The ALJ determined that transferability of job skills was not an issue because Plaintiff did not have any past relevant work. (*Id.*) Relying on the VE's testimony the ALJ further determined that given her age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as a food and beverage order clerk; a document preparer; and a charge account clerk. (R. at 29-30.)

4

Accordingly, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, since July 25, 2016. (R. at 30.)

## II.  STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015) (internal quotation and citations omitted).

## III.  DISCUSSION

Plaintiff puts forth two assignments of error: that the ALJ improperly determined that none of Plaintiff's severe impairments met a Listing, and that the ALJ failed to affirmatively discharge his duty to rectify or provide a basis for a discrepancy between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). (ECF No. 15 at PAGEID ## 1036-1045.) First, Plaintiff generally argues that Listing 11.07(A) "is clearly met by [Plaintiff's] diagnosis and lifelong battle with cerebral palsy," and that "[t]he ALJ's statements pertaining to Listings 11.07 and 1.02 . . . fail to address those portions of the record that suggest [Plaintiff's]

5

impairments do meet the Listings." (*Id.* at PAGEID ## 1036-1039.) Next, Plaintiff generally argues that "there is an unresolved conflict between the RFC findings restricting Plaintiff to simple, routine, and repetitive tasks, at a non-production rate pace, requiring only simple work-related decisions, and the VE's testimony that Plaintiff could perform jobs which according to the DOT require level 03 reasoning development." (*Id.* at PAGEID ## 1039-1045.) Plaintiff believes that the testimony from the VE failed to adequately describe with specificity the portions of the VE's testimony that were not in agreement with the DOT, and that remand is required as a result because the ALJ's Step 5 findings were not supported by substantial evidence. (*Id.*)

In response to Plaintiff's first argument, the Commissioner generally argues that Listing 11.07 was not met because "Plaintiff has not shown that [she] 'requires' an assistive device to ambulate or transition from a seated to standing position, as required by the listing," and Listing 1.02 was not met because Plaintiff "has not cited to any clinical findings showing that she had a limitation in 'both of her upper extremities.'" (ECF No. 20 at PAGEID ## 1061-1068.) In response to Plaintiff's second argument, the Commissioner generally argues that the VE's testimony did not conflict with the DOT, the ALJ satisfied his duty by inquiring about conflicts, and Plaintiff was given the opportunity to question the vocational expert but declined. (*Id.* at PAGEID ## 1068-1071.) The Court will address each of Plaintiff's arguments separately.

6

    **A.**    **Substantial Evidence Supports the ALJ's Finding That Plaintiff's Impairments Did Not Meet or Medically Equal a Listing.**

Plaintiff first argues that the ALJ's "evaluation of [L]istings 1.02 and 11.07[] was not proper." (ECF No. 15 at PAGEID # 1036.) The Court will analyze each Listing separately, beginning with Listing 11.07.

    **1.**    **Listing 11.07.**

Listing 11.07 requires that a claimant must show cerebral palsy characterized by one of the following:

    A.    Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2)[1] in the ability to stand up from a seating position, balance while standing or walking, or use the upper extremities; OR

    B.    Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:

        1.    Understanding, remembering, or applying information (see 11.00G3b(i)); or

        2.    Interacting with others (see 11.00G3b(ii)); or

        3.    Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

        4.    Adapting or managing oneself (see 11.00G3b(iv)). OR

    C.    Significant interference in communication due to speech, hearing, or visual deficit.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.07.  The ALJ explained his reasoning for finding that Plaintiff did not meet Listing 11.07 as follows:

---

[1] According to 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.00D2, "[e]xtreme limitation means the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities," and "[i]nability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes." *Id.*

7

>As for listing 11.07, the claimant had cerebral palsy, but the evidence did not document disorganization of motor function. Moreover, there were no objective findings indicating significant problems standing up from a seated position, balancing, or using her upper extremities. Furthermore, she did not have any marked limitations in the paragraph B criteria as noted below. Additionally, the claimant had no significant speech, hearing, or visual impairments.

(R. at 24.)

Plaintiff does not take issue with the ALJ's analysis as to the Paragraph B or Paragraph C criteria, but she instead argues that "Listing 11.07(A) is clearly met by [Plaintiff's] diagnosis and lifelong battle with cerebral palsy." (ECF No. 15 at PAGEID # 1036.)  Specifically, Plaintiff argues that Listing 11.07(A) was met because "[t]he medical record is replete with instances of [Plaintiff's] need of a cane to effectively ambulate." (*Id.*)  In support, Plaintiff states that her testimony "confirmed that she has required an assistive device since 2007 for ambulation, and transitioning from a seated to a standing position." (*Id.*)  Plaintiff does not, however, cite *any* specific testimony or other record evidence to support these statements.

On the other hand, the Commissioner cites an excess of substantial evidence that supports the ALJ's conclusion that Plaintiff does not need an assistive device to ambulate or transition from a seated to standing position, as required by the Listing.  (ECF No. 20 at PAGEID # 1061.)  Specifically, the Commissioner relies on the following record evidence, which the Court finds substantial:

- **R. at 458:**  Notes from Mary Rutan Hospital indicating that, as of June 14, 2016 (a week before her alleged onset date, and about a month before Plaintiff filed for disability benefits), Plaintiff's gait was not impaired, she did not use a device to assist her mobility, and she had a "fall risk" score of 0.

- **R. at 445:**  Notes from Mary Rutan Hospital indicating that, as of July 7, 2016 (after her alleged onset date, and about two weeks before Plaintiff filed for disability benefits), Plaintiff's gait was not impaired, she did not use a device to assist her mobility, and she had a "fall risk" score of 0.

- **R. at 920:**  Examination notes from Alexis L. Diglio, PA-C, indicating that on April 3, 2017, Plaintiff was "[u]sing no assistive device to ambulate."

8

The Commissioner also cites substantial record evidence to argue that "although Plaintiff used a cane at times, there were treatment records that either showed a normal gait, good stability or normal strength."  (ECF No. 20 at PAGEID # 1062 (citing R. at 465 ("[N]ormal gait"), 483 ("[N]ormal gait"), 719 ("[M]uscle strength and tone normal"), 871-872 ("Good stability"), 874-875 ("Good stability")).)

Moreover, Plaintiff's own statements that she lost thirty pounds in one and half years by walking and that she was able to perform daily activities such as helping with household tasks, preparing simple meals, helping with laundry, vacuuming and caring for her pet dog further support the ALJ's determination.  (R. at 234, 948, 950).)  Notably, the ALJ considered the opinions of two State Agency medical consultants who also concluded that Plaintiff did not meet Listing 11.07.  (*See* R. at 71, 85.)  These facts, combined with the lack of objective findings indicating that Plaintiff had problems standing from a seated position, balancing, or using her upper extremities, further provide substantial support for the ALJ's finding.  (*See* R. at 24.)

Given the above substantial evidence, the Court agrees with the Commissioner that the ALJ properly held that Plaintiff does not meet Listing 11.07 – especially given Plaintiff's failure to cite ***any*** substantial evidence in the record to the contrary when she carries the burden to do so.  See *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004) ("It is [Plaintiff's] burden to prove that he has an impairment or combination of impairments listed in, or medically equal to one listed in, 20 C.F.R. Pt. 404, Subpt, P, App. 1. To do so, he must present specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to a listed impairment.") (citing *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001); *Land v. Sec'y of HHS,* 814 F.2d 241, 245 (6th Cir. 1986)).

Regardless of whether Plaintiff's desired outcome could be supported by substantial evidence, it is the Court's responsibility to determine whether the ALJ's finding was supported by substantial evidence. Because it was in this case, the Court must defer to the ALJ's finding. *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole.") (internal citations omitted).

### 2. Listing 1.02.

Listing 1.02 requires that a claimant must show "major dysfunction" of a joint, defined and characterized by the following:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A.  Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
>
> B.  Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.02.  The ALJ explained his reasoning for finding that Plaintiff did not meet Listing 1.02 as follows:

> In terms of listing 1.02, the claimant had osteoarthritis in her knees and hands, with joint space narrowing in her knees. She used a cane to ambulate, but she did not require a second cane or a walker. Moreover, she was able to perform numerous daily activities as described below. Additionally, despite her hand arthritis, the evidence did not show that she was unable to perform fine and gross movements as demonstrated by her various daily activities.

(R. at 23.)

Plaintiff disagrees with the ALJ's findings for multiple reasons. First, Plaintiff cites x-rays taken of her right hand on February 22, 2017, which "evidenced subluxation, deformity, and joint space narrowing involving the right thumb and right third finger." (ECF No. 15 at PAGEID # 1037 (citing R. at 722-723).) Plaintiff also cites a January 8, 2015 right knee MRI which revealed subluxation and instability. (*Id.* (citing R. at 335).) Plaintiff argues that this right knee instability resulted in Plaintiff's surgeon prescribing a walker for her. This implicates Listing 1.02(A) and requires evidence that Plaintiff has an "inability to ambulate effectively," which is defined in relevant part as follows:

> Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(2)(b)(1). The Agency has provided examples of what constitutes effective (and ineffective) ambulation:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, **examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes**, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(2)(b)(2) (emphasis added).

Plaintiff's own testimony, however, contradicts her argument that she is unable to ambulate effectively. Specifically, Plaintiff testified that while she has used a walker since 2015, there are "some days when [she] [doesn't] need the walker," and that she only uses one cane –

11

not two. (R. at 44-45.) As the Commission also correctly observes, Plaintiff further undermines her argument by affirmatively conceding in the Statement of Errors that she uses her walker or cane with her dominant left hand, allowing her non-dominant right hand to be free for any lifting, carrying, or handling. (ECF No. 15 at PAGEID # 1038.) This concession necessarily suggests that Plaintiff's ambulation does not "limit[] the functioning of **both** upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(B)(2)(b)(1) (emphasis added). Finally, as discussed above, the record contains substantial evidence that Plaintiff can ambulate without an assistive device. (*See* R. at 445, 458, 920.) Plaintiff's first alleged error is therefore not well taken.

> B.   **Substantial Evidence Supports the ALJ's Finding That Plaintiff Could Perform Other Jobs that Exist in Significant Numbers in the National Economy.**

Plaintiff also takes issue with the ALJ's reliance on the VE's testimony. (ECF No. 15 at PAGEID ## 1039-1045.) Specifically, Plaintiff argues that the ALJ violated SSR 00-4p, which states in relevant part that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." *See* SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Plaintiff maintains that the ALJ did not do so here, and argues that as a result "there is an unresolved conflict between the RFC findings restricting Plaintiff to simple, routine, and repetitive tasks, at a non-production rate pace, requiring only simple work-related decisions, and the VE's testimony that Plaintiff could perform jobs which according to the DOT require level 03 reasoning development." (ECF No. 15 at PAGEID # 1040.)

The Court disagrees with Plaintiff. As shown below, the ALJ expressly asked the VE whether his testimony was consistent with the information provided in the DOT, and Plaintiff was given the opportunity to question VE but declined to do so:

> Q:   **And is your testimony consistent with the DOT?**

12

| | | |
|---|---|---|
| **A:** | | Yes. |
| Q: | | How much time off task, how many absences per month will an employer tolerate? |
| A: | | In my opinion, a person could be off task no more than ten percent to sustain employment, based on my training and experience. Plus in my opinion, a person can accrue an absent event ongoing no more than once a month to sustain competitive employment based on Bureau of Labor Statistics, absentee studies. |
| ALJ: | | Mr. Williams, do you have any questions? |
| **ATTY:** | | **No, your honor. We're satisfied with VE testimony.** Our position paper is in the record and accordingly we'll rest. |

(R. at 60-61 (emphasis added).) Given the VE's testimony that there was no conflict with the DOT, the Court agrees that the ALJ was under no further obligation to interrogate the VE. *See Creech v. Astrue*, No. 1:12-CV-161, 2013 WL 427627, at *7 (S.D. Ohio Feb. 4, 2013), *report and recommendation adopted sub nom. Creech v. Comm'r of Soc. Sec.*, No. 1:12-CV-00161, 2013 WL 1438001 (S.D. Ohio Apr. 9, 2013) ("Where, the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE.") (citing *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 606 (6th Cir. 2009)).

To that end, the Court also agrees with the Commissioner that the burden was actually on Plaintiff's counsel, not the ALJ, to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168–69 (6th Cir. 2009) ("As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p. This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief.")

13

(citing *Ledford v. Astrue,* 311 F. App'x 746, 757 (6th Cir. 2008)).  Here, because Plaintiff's counsel was "satisfied with [the] VE testimony" and chose not to investigate further, Plaintiff's second argument is without merit.

## IV.     CONCLUSION

Based on the foregoing, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.  The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner and close this case.

        **IT IS SO ORDERED.**


**Date: September 17, 2021**               /s/ *Elizabeth A. Preston Deavers*
                                                              **ELIZABETH A. PRESTON DEAVERS**
                                                              **UNITED STATES MAGISTRATE JUDGE**